Arlene Gordon-Oliver & Associates, PLLC
*Proposed Counsel for the Debtor in Possession*
199 Main Street, Suite 203
Tel: (914) 683-9750
 Arlene Gordon-Oliver

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

CAROUSEL OF LANGUAGES LLC

              Debtor In Possession

.

-----------------------------------------------------------x

CHAPTER 11
Case No. 15-12851(MG)

### EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS: (1) APPROVING POST-PETITION FINANCING; (2) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, PURSUANT TO 11 U.S.C. §§ 363 AND 364(C) AND (D); (3) MODIFYING AUTOMATIC STAY; (5) SETTING FINAL HEARING; AND (6) GRANTING RELATED RELIEF, PURSUANT TO <u>FEDERAL RULES OF BANKRUPTCY PROCEDURE 4001</u>

Carousel Language Program LLC, the debtor in possession (the "DIP"), hereby submits this emergency motion (the "Motion") for entry of interim and final orders: (1) Approving post-petition financing, (2) Granting liens and providing superpriority administrative expense status, pursuant to 11 U.S.C. §§ 363 and 364(c) and (d), (3) Authorizing use of cash collateral and providing adequate protection, pursuant to 11 U.S.C. §§ 361 and 363, (4) Modifying automatic stay, (5) Setting final hearing, and (6) Granting related relief, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the DIP respectfully sets forth and represents as follows:

<u>RELIEF REQUESTED</u>

1.     By this Motion and pursuant to Sections 105, 361, 362, 363, and 364 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 4001 and 9014, the DIP seeks the entry of an order (the "DIP Interim Order"), approving on an interim basis (pending a

final hearing) the terms and conditions of the DIP Financing set forth in the DIP Interim Order
(1) Approving Post-Petition Financing; (2) Granting Liens and Providing Superpriority
Administrative Expense Status, Pursuant to 11 U.S.C. §§ 363 and 364; (3) Authorizing Use of
Cash Collateral and Providing Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363;
(4) Modifying Automatic Stay; and (5) Setting Final Hearing, a copy of which is annexed hereto
as Exhibit "A", subject to modifications, if any, disclosed at the Interim Hearing (as defined
below).

2.      For the reasons set forth herein and in the Affirmation of Arlene Gordon-Oliver,
Esq, proposed counsel to the DIP, submitted in support of this application, the DIP requests that
the Court schedule an interim hearing (the "Interim Hearing") on the Motion as soon as possible.
Finally, the DIP requests that the Court schedule a final hearing (the "Final Hearing") on the
Motion, consistent with Bankruptcy Rule 4001, as soon as possible but no sooner than fifteen
(15) days after the date of filing this Motion.

## JURISDICTION

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is
a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these proceedings and this
Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are §§ 105, 361, 362, 363,
and 364 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014.

## FACTS

5.      On October 22, 2015, (the "Petition Date"), a *pro se*, Petition for Relief under
Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") was filed with the
United States Bankruptcy Court for the Southern District of New York (the "Court") .

6.    The DIP has continued to manage its assets and business affairs.  No trustee or examiner has been appointed in this case.

7.    As of the date hereof, an Official Committee of Unsecured Creditors has not been formed.

## THE DIP'S BUSINESS

8.    The DIP is in the business of owning and operating a corporation established in 2000 in the State of New York operate an early childhood foreign language school, offering lessons on Italian, French, Spanish, Mandarin, Russian, Greek, Hindi, Turkish and Hebrew. DIP's school also provides children with a connection to their heritage and new languages through linguist and cultural exploration. The DIP's additional projects include the development of educational applications and products by the DIP's affiliates Carousel Language Program LLC and Carousel Language Product LLC.

## RELEVANT BACKGROUND

9.    The DIP commenced its operations in 2000. In order to expand its operations, the DIP obtained certain pre-petition financing from the New York Business Development Corp. which subsequently assigned its interest in the obligation to True Fund Financial Services and Seedco Financial Services. In 2011, the DIP opened its operations at 144 West 72nd Street, New York, New York 10023 (the 72nd Street Location") and 1309 Madison Avenue, New York New York (the "Main Location"). The DIP subsequently expanded to a third location at 1300 Madison Avenue, New York, New York (the "Third Location"). All locations were subject to lease agreements with unrelated third parties.

10.    Unfortunately, the expansion of the DIP's operations resulted in increased overhead, most significantly rent payments and payroll. However, the DIP's income did not

3

increase to a level that would sustain its operations.

11.     As a result of the expansion of the DIP's operations and overhead, the DIP fell behind in its obligations and was forced from time to time to obtain additional funding.

12.     The DIP was forced to file the instant Chapter 11 case, after falling behind on the rent payments with its current landlord, PYML Associates, for its Main Location (the "Landlord"). Despite its attempts to obtain additional funding in order to resolve its issues with the Landlord, the DIP had been unable to do so.

13.     Upon learning that the Landlord was about to serve the DIP with a Warrant of Eviction, the DIP had no alternative but to seek protection under Chapter 11 of the Bankruptcy Code in order to arrive at a resolution with its Landlord and to also resolve outstanding obligations with its other creditors.

A.        **The Pre-Petition Obligations and Pre-Petition Collateral**

8.     As of the Petition Date, (i) the DIP was indebted to True Fund Financial Services, Inc. ($60,170); Seedco Financial Services, Inc. ($34,522.50); Pearl Capital Rivis Ventures $14,883.37); Wells Fargo/Pacific Leasing ($3,650.00); and Snap Advances LLC ($2,692.00) providing limited financing in an aggregate outstanding principal balance of $115,817.187, (the "Pre-Petition Obligations"), and (ii) the Pre-Petition Obligations were secured by security interest in the assets of DIP (the "Pre-Petition Collateral").

## THE DIP FINACING AND USE OF CASH COLLATERAL

9.     As a result of Debtor's request and arm's length negotiations, Julian Salisbury a parent whose children attend the school is willing to personally make post-petition discretionary loans, and advances to the DIP in an aggregate amount at any time outstanding up to

4

$100,000.00, and to consent to the DIP's use of the Pre-Petition Collateral and Cash Collateral pursuant to: (a) the budget annexed as Exhibit "A" to the proposed DIP Interim Order and all extensions thereof agreed to in furtherance thereof (the "Budget"); (c) the DIP Interim Order; and, (d) any final order (the "DIP Final Order") approving the Motion (collectively, the Pre-Petition Agreements, the Budget, the DIP Interim Order, and DIP Final Order shall be referred to hereinafter as the "DIP Financing Documents").

10.    The DIP believes that the use of Cash Collateral, and the loans, advances, and other financial accommodations, will provide it with sufficient liquidity to operate its business during the Chapter 11. Accordingly, the DIP is hereby seeking authorization to obtain the post-petition financing contemplated herein and use of Cash Collateral.

## A.    Terms of the DIP Financing

11.    The terms of the DIP Financing are more specifically set forth in agreements ("Loan Agreement") attached hereto as Exhibit "B". The key provisions of the DIP Financing are as follows:

(a)    Borrower: Carousel Language Program LLC.

(b)    Lender: Julian Salisbury ("Lender")

(c)    Type of Financing: Discretionary senior secured superpriority debtor in possession financing secured by all of the assets of the DIP.

(d)    Amount of Financing: The Lender shall extend in Lender's discretion advances up to an aggregate amount at any time outstanding of $100,000.00, which may be repaid and relent.

(e)    Interest: Eight (8%) percent per annum based on a 360 day year.

(f)    Default Interest: Three (3%) percent above the otherwise applicable rate of interest.

(g)    Costs: The DIP shall reimburse Lender for its reasonable expenses associated with the closing and administration of the loan facility, including legal fees.

(h)    Term: Initial Term is through December 31, 2016; renewable annually thereafter, at Lender's option.

(i)    <u>Purpose</u>: To finance working capital and other general corporate purposes while under Chapter 11 protection, including the payment of expenses associated with the Bankruptcy Case and the payment of $17,000 to its accounting firm for service rendered and to be rendered to date and to pay a retainer of $15,000 to the law firm of Arlene Gordon-Oliver to represent the DIP in the Chapter 11 proceeding.

(j)    <u>Collateral</u>:    All of the DIP's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and the products thereof.    Notwithstanding the foregoing, the Collateral shall not include causes of action brought pursuant to Bankruptcy Code §§ 544, 547, 548, 550 and 553 and recoveries upon such causes of action, but shall include other causes of action of the DIP (including without limitation those arising under Bankruptcy Code § 549) that are not within the scope of said statutory provisions.

(k)    <u>Priority and Security</u>:

- <u>DIP Super Priority Claim</u>.  Pursuant to Bankruptcy Code Sections 363 and 364(c), the Adequate Protection Claim and any and all post-petition Obligations of the DIP to Lender pursuant to the DIP Financing Documents (collectively, the "Post-Petition Claim") shall be allowed administrative expenses of the DIP's estate, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the DIP over all administrative expenses or charges against property arising in the DIP's Chapter 11 case or any superseding Chapter 7 case, including without limitation those specified in Bankruptcy Code Sections 105, 326, 330, 328, 331, 503(b), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, subject only to the Carve -Out.

- <u>Liens</u>. Pursuant to Bankruptcy Code § 363 and 364(c), as security for the Post-Petition Claim, the DIP is hereby authorized to and is hereby deemed to grant to Lender a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien," and as so granted to Lender, the "Post-Petition Lien") in all of the DIP's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral", and to the extent created, acquired or arising after the Petition Date, the "Post-Petition Collateral").  the Collateral shall not include causes of action brought pursuant to Bankruptcy Code §§ 544, 547, 548, 550 and 553 and recoveries upon such causes of action, but shall include other causes of action of the DIP (including without limitation those arising under Bankruptcy Code § 549) that are not within the scope of said statutory provisions.

6

• <u>Priority of Post-Petition Lien</u>. The Post-Petition Lien shall have the following priority with respect to the Collateral:

(a) Pursuant to Bankruptcy Code § 364(c)(2), first priority as to (1) all Pre-Petition Collateral that as of the Petition Date was not subject to (A) valid, enforceable, properly perfected, and unavoidable Liens or (B) valid, enforceable, and unavoidable Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted by Bankruptcy Code § 546(b), and (2) all Post-Petition Collateral;

(b) Pursuant to Bankruptcy Code § 364(c)(3), junior priority as to all Pre-Petition Collateral that as of the Petition Date was subject to valid, enforceable, properly perfected, and unavoidable Liens, or was subject to valid, enforceable, and unavoidable Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted by Bankruptcy Code § 546(b) (collectively, "Senior Third Party Liens");

(c) The Post-Petition Lien shall not be subject or subordinate to (1) any Lien which is avoided and which would otherwise be preserved for the benefit of the DIP's estate under Bankruptcy Code § 551, or (2) any Lien arising after the Petition Date, including without limitation any Lien granted in favor of any governmental unit (including any regulatory body of any governmental unit or otherwise), board, commission, or court, for any liability of the DIP;

(d) Lender shall not be subject to the "equities of the case" exception of Bankruptcy Code § 552(b), or the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any Collateral.

(l)    <u>Carve-Out</u>: the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any unpaid fees due and owing to the Clerk of the Court (collectively, the "Statutory Fees") and allowed fees of any Chapter 7 Trustee under bankruptcy code § 726(b) and the allowed fees and expenses of the professionals retained by the Chapter 7 Trustee and approved by final orders of the Court (the "Chapter 7 Professionals") whether incurred or payable prior or subsequent to the giving of a Default Notice (as such term is defined below) or the occurrence of the Expiration Date (as such term is defined below).

(m)    <u>Conditions Precedent to All Loans</u>: Customary for facilities of this nature, as set forth in the DIP Factoring Agreement attached hereto.

7

(n)    Covenants: The DIP Loan Agreements contain affirmative, negative and financial reporting covenants customary for facilities of this nature and otherwise satisfactory to Lender.

(o)    Events of Default: Each of the following shall constitute an "Event of Default" for purposes of this Order:

(i) the Court enters an order authorizing the sale of all or substantially all assets of the DIP that does not provide for the payment in full of the Obligations in cash upon the closing of the sale, unless otherwise agreed by Lender in its sole and absolute discretion;

(ii) the Court enters an order, the effect of which has not been stayed, granting relief from the automatic stay to a third party with respect to material assets of the DIP's estate;

(iii) the DIP ceases operations of its present business or takes any material action for the purpose of effecting the foregoing without the prior written consent of the Lender, except to the extent contemplated by the Budget;

(iv) the Chapter 11 Case is either dismissed or converted to a Chapter 7 case pursuant to an order of the Court, the effect of which has not been stayed;

(v) a Chapter 11 trustee, or an examiner with materially expanded powers beyond those set forth in Bankruptcy Code § § 1106(a)(3) and 1106(a)(4), or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed, in the Chapter 11 Case;

(vi) this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of Lender, materially and adversely affect the rights of Lender hereunder or shall materially and adversely affect the priority of any or all of the Obligations or Lender's Liens;

(vii) the occurrence subsequent to the Petition Date of an Event of Default under the Loan Agreements;

(viii) (1) the DIP expends any funds or monies for any purpose other than those set forth on the Budget, (2) the DIP expends any funds or monies in excess of the amounts authorized in the Budget, provided that for the cumulative Budget periods which have occurred the DIP's actual cash disbursements may be up to ten percent (10%) more than the cumulative budgeted amount for cash disbursements through the conclusion of such Budget periods without such expenditures constituting an Event of Default, (3) the DIP fails to achieve revenues of at least eighty percent (80%) of the revenue projections set forth in the Budget for the cumulative Budget periods which have occurred, tested weekly thereafter on a four week trailing basis, or (4) the DIP fails to maintain numbers of tuition paying students of at least eighty percent (80%) of the levels reflected in

8

the Budget, tested quarterly as of the last business day of each fiscal quarter of the DIP;

(ix) the occurrence of a material adverse change from and after the Petition Date, except to the extent contemplated by the Budget, including without limitation any such occurrence resulting from the entry of any order of the Court, in each case as determined by Lender in its sole and absolute discretion, in (1) the condition (financial or otherwise), operations, assets, business or business prospects of the DIP, (2) the DIP's ability to repay the Obligations, and/or (3) the value of the Collateral;

(xi) any material and/or intentional misrepresentation by the DIP in any financial reporting or certifications to be provided by the DIP to Lender;

(xii) non-compliance or default by the DIP with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the DIP within ten business days after notice of such non-compliance or default is given to the DIP by Lender.

12.    The DIP recommends the approval of the DIP Financing because the DIP is in a precarious financial position.  It needs immediate financing for the retention of professionals. The Debtor filed a pro se Petition as it was unable to secure funds to provide a pre-petition retainer to its proposed professionals. The DIP is unable to find other source of financing, and as a Chapter 11 Debtor, this case cannot proceed under Chapter 11 without the DIP Financing and proper representation, which would result in a loss of significant value to the DIP's estate.

13.    Despite the DIP's negotiation efforts, however, certain of the terms and conditions of the DIP Financing may be considered objectionable by the Court and other parties in interest. Accordingly, the Court and other parties in interest are urged to review the terms and conditions of the DIP Financing and the proposed DIP Interim Order carefully.  Among other things, **the DIP Financing and the proposed DIP Interim Order provide for the following:  the DIP has agreed that the description of Collateral shall include proceeds from avoidance actions pursued under Section 549 of the Bankruptcy Code, while all other avoidance actions under Chapter 5 of the Bankruptcy Code are excluded.**  See DIP Interim Order, ¶ 4.

**B.**    <u>The Necessary Showings Under Section 364</u>

14.    Section 364 of the Bankruptcy Code provides, in pertinent part, as follows:

(a)    If the trustee is authorized to operate the business of the DIP under Section 721, 1108, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

(b)    The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

(c)    If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt --

(1)    with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)    secured by a junior lien on property of the estate that is subject to a lien.

(d)    (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if --

(A)    the trustee is unable to obtain such credit otherwise; and

(B)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior lien is proposed to be granted.

11 U.S.C. §§ 364(a) through (d).

15.    Generally, Section 364(c) of the Bankruptcy Code requires a DIP to demonstrate that alternative sources of credit are not available under the other provisions of Section 364. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990). Although there is "no duty to seek credit from every possible lender before concluding that such credit is unavailable," the statute obligates a DIP to show "by a good faith effort that credit was not available without

the senior lien." *Bray v. Shenandoah Fed. Sav. and Loan Assoc. (In re Snowshoe Co.. Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).

16.    Against this statutory backdrop, courts will evaluate the facts and circumstances of a DIP's case, and will accord significant weight to the necessity for obtaining the financing. *See, e.g., In re Snowshoe*, 789 F.2d at 1088; *In re Ames*, 115 B.R. at 40. For example, the need for a swift injection of cash to preserve a DIP's business satisfies the requirements of Section 364(d) when coupled with unsuccessful attempts to locate alternative financing. *See In re Ames Dep't Stores, Inc.*, 115 B.R. at 40. *See also In re Snowshoe*, 789 F.2d at 1088 (primary facts supporting priming liens included lack of alternative financing sources and need to obtain prompt cash infusion to preserve value of DIP's business).

## C.    The Search for the Best DIP Financing Available

17.    The DIP made a serious and good faith effort to obtain post-petition financing pursuant to Sections 364(a) and (b) of the Bankruptcy Code.

18.    Aside from the Lender, who, because in part, is the parent of children enrolled in the DIP, is willing to provide the DIP Financing outlined herein, the DIP approached several financial institutions actively involved in the DIP lending field. Ultimately, however, the DIP was unable to obtain any interest from other financial institutions. Based upon this effort and such financial institution's response, the DIP concluded that (a) unsecured financing on any basis would not be available, and (b) super-priority claims and liens would, as a practical matter, be the only basis upon which to structure an alternative facility. The DIP is comfortable that the proposal contained in the DIP Financing is the best financing available to the DIP.

## D.    Need for Post-Petition Financing

19.    Without the funds contemplated in this Motion, the DIP will not have sufficient funds to retain professionals and to operate its business properly including funding of payments

to its Landlord and the value of the DIP's assets will deteriorate rapidly. Indeed, as set forth above, on an interim basis and pending the Final Hearing, the DIP needs the proceeds from the DIP Financing in order to retain professionals to represent its interests. Therefore, interim approval of the proposed financing pending the Final Hearing is in the best interests of the DIP, its estate and its creditors.

20.     On a more long-term basis, and for many of the same reasons, it is essential to the that the DIP obtain authority to incur post-petition financing to continue ordinary course operations for the continuing success of its operations. Only through the DIP Financing can the DIP be assured of sufficient available working capital for the maximization of its future business prospects and successful conclusion of its Chapter 11 benefiting creditors.

## NOTICE

21.     Given the exigencies of this case and the DIP's urgent need to obtain approval of post-petition financing on an interim basis, the DIP respectfully requests that the Court approve the proposed DIP Interim Order.

22.     No trustee or creditors' committee have been appointed in this case. Pursuant to Bankruptcy Rule 4001, the DIP respectfully proposes to promptly give notice of the Interim and Final Hearings. With respect to the Interim Hearing, the DIP will provide notice by electronic transmission, facsimile or overnight mail of this to: (a) the Office of the United States Trustee; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to Lender; (d) all remaining secured creditors; (e) all relevant taxing authorities; and (f) all parties that have filed and served, pursuant to Bankruptcy Rule 2002, a notice of appearance in this case. The DIP respectfully submits that such notice is sufficient and requests that this Court find that no further notice of the relief

requested herein is required.

23.    With respect to the final order, the DIP also proposes to serve a copy of the entered DIP Interim Order, the Motion (together with the Exhibits) and Notice of Final Hearing by electronic transmission, facsimile, or overnight mail, within two (2) days after entry of the DIP Interim Order, upon: (a) the Office of the United States Trustee; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to Lender; (d) all remaining secured creditors; (e) all relevant taxing authorities; and (f) all parties that have filed and served, pursuant to Bankruptcy Rule 2002, a Notice of Appearance in this case.  The DIP will serve Notice of the Final Order by first class mail on all of the DIP's creditors.

24.    The DIP respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the DIP Interim Order, Final Hearing, the Final Order and all proceedings to be held in connection therewith is required.

25.    No previous motion or application for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the DIP respectfully requests that the Court enter an order, (i) granting

the relief requested herein, and (ii) granting such other relief as is just and proper.

Dated: White Plains New York
       November 30, 2015


                                    Arlene Gordon-Oliver & Associates, PLLC
                                    *Proposed Counsel for the DIP*

                                    /s/ Arlene Gordon-Oliver
                                    Arlene Gordon-Oliver
                                    199 Main Street, Suite 203
                                    White Plains, NY 10601
                                    Tel: (914) 683-9750
                                    ago@gordonoliverlaw.com