ARLENE GORDON-OLIVER & ASSOCIATES, PLLC
Attorneys for the Debtor
199 Main Street, Suite 203
White Plains, New York 10601
Telephone 914-683-9750
Arlene Gordon-Oliver

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

CAROUSEL OF LANGUAGES, LLC,

                                   Debtor.
---------------------------------------------------------X

Chapter 11

Case No. 15-12851(MG)

## <u>DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION</u>

## <u>INTRODUCTION</u>

Carousel of Languages,  LLC, the debtor and debtor-in-possession (the "Debtor" or "Carousel"), hereby proposes the following Chapter 11 Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

**ARTICLE I**
**<u>DEFINITIONS</u>**

For the purposes of this Chapter 11 Plan of Reorganization, and the Debtor's Disclosure Statement, to be soon filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1    "Administrative Claim" shall mean any Claim constituting a cost or expense of administration incurred on or after the Petition Date of the kind described in §§503(b) or 507(a) of the Bankruptcy Code, including, without limitation all allowances of compensation or reimbursement of expenses to Professionals to the extent allowed by the Bankruptcy Court.

1.2    "Allowed" shall mean that portion of a Claim or Interest that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.3    "Ballot" shall mean each of the voting forms to be distributed with the Plan and the Disclosure Statement to holders of Claims or Interests in Classes that are impaired under the terms of the Plan and are entitled to vote in connection with the solicitation of acceptances of the Plan.

1.4    "Bankruptcy Code" shall mean title 11 of the United States Code, 11 U.S.C. §§101, et seq.

1.5    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

1.6    "Bankruptcy Rule(s)" shall mean the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.7    "Cash" shall mean cash and cash equivalents.

1.8    "Chapter 11 Case" shall mean the Debtor's case under Chapter 11 of the Bankruptcy Code, *In re Carousel of Languages LLC, Case No.: 15-12851(MG)*.

1.9    "Claim" is defined in Section 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under Sections 550 and 553 of the Bankruptcy Code and any claim against

the Debtor that does not arise until after the commencement of the Chapter 11 case for a tax

entitled to priority under Section 507(a) of the Bankruptcy Code.

    1.10    "Confirmation Date" shall mean the date upon which the Confirmation Order is

entered by the Bankruptcy Court.

    1.11    "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to

§1129 of the Bankruptcy Code confirming the Plan.

    1.12    "Debtor" shall mean Carousel of Languages, LLC.

    1.13    "Department of Labor" shall mean the New York State Department of Labor.

    1.14    "Disbursing Agent" shall mean the Debtor, Carousel of Languages, LLC, who

shall act in such capacity in order to effectuate the payment of distributions under the Plan.

    1.15    "Disclosure Statement" shall mean the Debtor's Disclosure Statement and any

amendments hereto or modifications hereof made in accordance with the provisions of the

Bankruptcy Code.

    1.16    "Disputed" shall mean a Claim or Interest, or any portion of a Claim or Interest,

that is not Allowed.

    1.17    "Distribution Date" shall mean the date or dates on which distributions are made

by the Disbursing Agent to holders of Claims under the Plan.

    1.18    "Effective Date" shall mean the date upon which the Confirmation Order

becomes a Final Order.

    1.19    "Final Order" shall mean an order or judgment which has not been stayed and as

to which order or judgment the time to appeal or seek review or rehearing has expired and as to

which no appeal, petition for review or rehearing is pending.

1.20    "General Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Priority Tax Claim or Secured Claim including, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

1.21    "Interest(s)" shall mean the rights and ownership interests of the Debtor in its Chapter 11 estate.

1.22    "Julian Salisbury" shall mean the holder of an allowed secured administrative claim pursuant to an Order of this Court dated March 29 , 2016 (Docket No. 37).

1.23    "Non-Tax Priority Claim" shall mean any Claim against the Debtor to the extent entitled to priority in payment under §507(a)(4)-(6) of the Bankruptcy Code.

1.24    "Petition Date" shall mean October 22, 2016.

1.25    "Plan" shall mean this Chapter 11 Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.26    "Priority Tax Claim" shall mean a Claim, other than an Administrative Claim, that is entitled to priority under Section 507 of the Code and is held by a federal, state, or municipal taxing authority.

1.27    "Professionals" shall mean all attorneys, accountants, financial consultants and/or other professional persons retained in the Chapter 11 Case or to be compensated by a Final Order pursuant to §§327, 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code.

1.28    "Professional Fee Claims" shall mean the Administrative Claims of Professionals for compensation and reimbursement.

1.29    "Reorganized Debtor" means the Debtor, as it will have emerged pursuant to this Plan after the Effective Date.

1.30    "Reorganized Debtor Interests" means Interests in the Reorganized Debtor.

1.31    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by §521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.32    "Secured Claim" shall mean a claim that is secured by a lien on property of the Debtor's estate in accordance with §506(a) of the Bankruptcy Code.

1.33    "Silversmith" shall mean Silversmith & Associates Law Firm, PLLC, counsel for Debtor's landlord, PYML Associates, LLC.

1.34    "Unimpaired" shall mean treated under the Plan pursuant to §1124(1) or (2) of the Bankruptcy Code so as to be not impaired.

## ARTICLE II
## DESIGNATION  OF CLAIMS AND INTERESTS

All Claims, as defined herein and in §101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, and all Interests in or of the Debtor, whether resulting in an Allowed Claim or an Allowed Interest or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1    <u>Classification of Claims</u>. Section 2.2 sets forth the designation of the Classes of Claims and Interests. A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Interest qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim or Interest qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the

different Claim classifications. Administrative Claims, Allowed Professional Fee Claims, U.S. Trustee's fees and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Section 3.2 in accordance with §1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims or Interests pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims or Interests.

2.2     Classes. Class 1 and 2 Claims are impaired under the Plan, and thus holders of Class 1 and 2 Claims are entitled to vote on the Plan.  For purposes of the Plan, those persons holding Claims or Interests against the Debtor are grouped in accordance with §1122 of the Bankruptcy Code as follows:

Class 1: shall consist of the Allowed Priority Wage Claims.

Class 2: shall consist of all Allowed General Unsecured Claims.

### ARTICLE III
### TREATMENT OF CLAIMS UNDER THE PLAN

3.1     Unclassified Claims.

(a)     Allowed Administrative Claims other than Claims of Professionals:  Allowed Administrative Claims shall be paid in the ordinary course and according to the terms and conditions of the respective contracts with respect to those Claims. The Debtor does not believe that any such Claims exist, other than (i) the claim of Silversmith, which shall be paid its Allowed Administrative Claim in full on the Effective Date, and (ii) the claim of Julian Salisbury, which is secured by a "blanket lien" on all of the Debtor's property, and shall be paid in full in over not more than ten years, from the Confirmation Date, with interest at 5% per annum, and with interest-only payments to be paid over the first five years and interest and principle to be paid of the final five years; further, at any time the Debtor's monthly cash balance

exceeds $100,000.00, such overage shall be remitted as an accelerated payment to Julian

Salisbury.  To the extent that any other such Claims should exist, they shall be paid in the

ordinary course and according to the terms and conditions of the respective contracts underlying

such Claims.  Any additional expenses incurred by Debtor, post-petition, which remain unpaid

on Confirmation, will be paid in full from Debtor's available cash.

(b)    <u>Allowed Administrative Professional Fees</u>:  Allowed Professional Fee Claims

shall be paid, in full, in Cash, upon the later of (i) allowance by the Court pursuant to Section

330 of the Bankruptcy Code or (ii) the Effective Date.   All entities seeking an award by the

Bankruptcy Court of Professional Fees, or of compensation for services rendered or

reimbursement of expenses incurred through and including the Confirmation Date under

Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, (a) shall file their

respective final applications for allowances of compensation for services rendered and

reimbursement of expenses incurred through the Confirmation Date no later than ninety (90)

days after the Effective Date, and (b) if granted, such an award by the Bankruptcy Court shall be

paid in full in such amounts as allowed by the Bankruptcy Court in over not more than three

years, in equal quarterly installments commencing (i) on the later of the Effective Date or the

date such Administrative Professional Fee Claim becomes Allowed or (ii) upon such other terms

as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and

the Debtor, on and after the Effective Date.

All Professional Fee Claims for services rendered in connection with this Chapter 11

Case and the Plan after the Confirmation Date, including, without limitation, those relating to the

occurrence of the Effective Date and the resolution of Disputed Claims, shall be paid by the

Disbursing Agent upon receipt of an invoice therefor, without the need for further Bankruptcy

Court authorization or entry of a Final Order. If the Debtor and any Professionals cannot agree on the amount of post-Confirmation Date Professional Fee Claims to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.  The Debtor/Reorganized Debtor shall remain liable and responsible for payment of all post-Confirmation Professional Fee Claims.

(c)    United States Trustee's Fees: All United States Trustee statutory fees arising under 28 U.S.C. §1930(a)(6) shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor. The Debtor shall be responsible, through the entry of a final decree closing the Chapter 11 Case, for the payment of United States Trustee quarterly fees, and, pursuant to 31 U.S.C. §3717, any interest assessed on unpaid Chapter 11 quarterly fees charged, assessed at the interest rate in effect as determined by the Treasury Department at the time charges become past due; however, if payment of the full principal amount is received within thirty (30) days of the date of the notice of initial interest assessment, the interest assessed will be deemed waived.

(d)    Priority Tax Claims:  Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code shall be paid in full in over not more than five years, in equal quarterly installments, from the Confirmation Date, with interest at the rate established by the Internal Revenue Service pursuant to 26 U.S.C. Section 6621 or such other relevant statute.   The allowed claim of the Department of Labor shall be paid in full on the Effective Date.

3.2    Classified Claims

Class 1:  Class 1 consists of the Allowed Priority Wage Claims.  Each holder of an allowed Priority Wage Claim shall be paid in full in over not more than five years from the Effective Date, in equal quarterly installments, up to the amount of any such claim not in excess

of $12,475.  Any Allowed Priority Wage Claim that is in excess of $12,475 shall have the amount over $12,475 treated as a Class 2 General Unsecured Claim.  Class 1 Claims are Impaired under the Plan, and thus holders of Class 1 Claims are entitled to vote on the Plan.

Class 2:  Class 2 shall consist of General Unsecured Claims.

Class 2 Claims shall be paid 20% of the respective allowed Class 2 Claims in over not more than five years from the Effective Date, in equal quarterly installments.

Class 2 Claims are impaired under the Plan, and thus holders of Class 2 Claims are entitled to vote on the Plan.

3.3    Presumed Acceptance of the Plan. Classes 1 and 2 are impaired under the Plan, and are entitled to vote to accept or reject the Plan.  Class 1 and 2 Creditors are being solicited to vote to accept or reject the Plan.

3.4    Full and Final Satisfaction. Performance of all of the obligations hereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims against the Debtor.

3.5    Blank Ballots.  Any ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall not be counted.

3.6    Deemed Acceptance.  Any impaired Class which fails to vote either to accept or reject the Plan shall be deemed to accept the Plan.

**ARTICLE IV**
**PLAN IMPLEMENTATION**

4.1    Continued Limited Liability Company.  The Debtor shall, as the Reorganized Debtor, continue to exist after the Effective Date as a legal entity, with all the powers of a limited liability company under the laws of the State of New York , and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

4.2    <u>Means for Execution</u>.    The Debtor intends to implement this Plan with funds generated from the operation of its business and with a loan from Julian Salisbury in the amount of $75,000. The projected sources and uses of funds to fund all obligations due in accordance with this Plan are set forth in the Disclosure Statement and Exhibits annexed thereto.

4.3    <u>Provisions Concerning Distributions</u>.

(a)    <u>Transmittal of Distributions and Notices</u>. Any property or notice which a person or entity is or become entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that person or entity at the address indicated on a properly filed proof of claim or, absent such a proof of claim, the address that is scheduled for that person or entity or to such other address as may be designated by the claimant. The Disbursing Agent and Debtor's counsel shall use their collective best efforts to obtain current addresses for all claimants.  Property distributed in accordance with this Section shall be deemed delivered to such person or entity regardless of whether such property is actually received by that person.

(b)    <u>Manner of Payments under the Plan</u>. Payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank account maintained by the Disbursing Agent.

(c)    <u>Fractional Cents</u>. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

(d)    <u>Unclaimed Cash</u>. Except as otherwise provided herein, in the event any holder of an Allowed Claim fails to claim any distribution properly made under this Plan within four (4) months from the applicable Distribution Date, such claimant shall forfeit all rights thereto, and to

any and all future payments, and thereafter the Claim for which such Cash was distributed shall

be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their

last known address set forth on the most recent proof of claim filed with the Bankruptcy Court

or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as

may be later designated by a creditor in writing. The Disbursing Agent shall notify Debtor's

counsel of all returned distributions.  The Disbursing Agent and its attorneys shall use their best

efforts to obtain current addresses for all claimants.

(e)     <u>Disputed Payments or Distribution</u>. In the event of any dispute between and

among claimants (including the entity or entities asserting the right to receive the disputed

payment or distribution) as to the right of any entity to receive or retain any payment or

distribution to be made to such entity under this Plan, the Debtor/Disbursing Agent may, in lieu

of making such payment or distribution to such entity, remit the disputed portion of the Claim

into an escrow account or to a distribution as ordered by a court of competent jurisdiction as the

interested parties to such dispute may otherwise agree among themselves. Notwithstanding

anything to the contrary, the Debtor/Disbursing Agent shall make distributions on account of the

undisputed portion of a Claim to such Claimants.

(f)     <u>Setoffs</u>. Except as otherwise provided in the Plan, the Confirmation Order, or in

agreements previously approved by Final Order of the Bankruptcy Court, the Debtor may,

pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against

any Claim and any distribution to be made on account of such Claim, any and all of the claims,

rights and causes of action of any nature that the Debtor or the estate may hold against the holder

of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of

any Claim hereunder, any other action or omission of the Debtor or the estate, nor any provision

of this Plan shall constitute a waiver or release by the Debtor or the estate of any such claims, rights and causes of action that the Debtor or the estate may possess against such holder. To the extent the Debtor fails to set off against a claim and seek to collect a claim from such creditor after a distribution to such creditor pursuant to the Plan, the Debtor shall be entitled to full recovery on its allowed claim against such creditor.

### ARTICLE V
### RESOLUTION OF DISPUTED CLAIMS & RESERVES

5.1     Objections. An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time on or before the Effective Date, or within such other time as may be fixed by the Bankruptcy Court for cause. Notwithstanding the foregoing, the Debtor/Reorganized Debtor or any other party in interest shall file any and all objections to Claims no later than ninety (90) days after the later of (a) the Effective Date and (b) the applicable bar date for such claim.  The Debtor has not filed any claim objections to date.  The Debtor does not expect to file any claim objections at this time.

5.2     Amendment of Claims. A Claim may be amended, to increase the face amount thereof, after the Effective Date, only as agreed upon by the Debtor/Reorganized Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Debtor/Reorganized Debtor to decrease, but not increase, the face amount thereof, without the need for Bankruptcy Court approval.

5.3     Estimation of Disputed Claims. The Debtor/Reorganized Debtor may, if necessary, seek an order or orders from the Bankruptcy Court, estimating the maximum dollar amount of Allowed and Disputed Claims in each Class of Claims, inclusive of contingent and/or

unliquidated Claims, or otherwise determining and fixing the amount of the Disputed Claims reserve for each Class, and may seek to set the amount of any particular Claim for final allowance purposes pursuant to sections 105 and 502(c) of the Bankruptcy Code. This estimate shall be used to calculate and fix distributions to holders of Allowed Claims and the amount of the respective Disputed Claims reserve. In the event the Debtor seeks to estimate such Claims, Disputed Claims reserves shall be established for each such category of Claims.

5.4     Reserves for Disputed Claims. The Debtor/Reorganized Debtor shall reserve, on account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder on such date were such Disputed Claim at issue an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim at issue and the Debtor may agree upon. The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

5.5     Distributions to Holders of Subsequently Allowed Claims. Unless another date is agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor shall, within ten (10) days after an Order resolving the Disputed Claim is entered by the Bankruptcy Court, and after such Order becomes a Final Order, make such distribution consistent with the terms of the Plan. With respect to the Allowed Amount of such theretofore Disputed Claim is determined, the Disbursing Agent will distribute to such holder with respect to such subsequently Allowed Claim that amount, in Cash, from the Cash held in reserve for such holder and, to the extent such reserve is insufficient, from any other source of Cash otherwise available to the Debtor, equal to that amount of cash which would have been distributed to such holder from the Effective Date through such distribution date had such holder's subsequently

Allowed Claim been an Allowed Claim on the Effective Date.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     <u>Rejection of Executory Contracts and Unexpired Leases</u>. As of the Effective Date,

the lease of the Debtor's non-residential commercial lease of office space located at 1309

Madison Avenue with PYML Associates, LLC shall be assumed by the Debtor.   Any other

unexpired lease or contract that is executory, in whole or in part, to which the Debtor is a party

and which has not been expressly rejected or assumed pursuant to Section 365 and/or 1123 of the

Bankruptcy Code during the pendency of the Chapter 11 Case, shall be deemed rejected by the

Debtor as of the Effective Date.  **All proofs of claim with respect to any Claims arising from**

**the rejection of executory contracts or unexpired leases, must be filed with the Bankruptcy**

**Court within thirty (30) days after the Effective Date. The failure of any such counterparty**

**to file a proof of claim within the period proscribed shall be forever barred from asserting**

**against the estate or the Debtor any claim for damages arising from the rejection of their**

**respective executory contract or unexpired lease with the Debtor, and such Claim shall be**

**deemed waived and discharged.** The filing of any such proof of claim shall be without

prejudice to any and all rights the Debtor may have to object to the allowance thereof on any and

all available grounds.

## ARTICLE VII
## EFFECT OF CONFIRMATION

7.1     <u>Vesting of Property</u>. On the Effective Date, title to and possession of any and all

property of the estate, real or personal, if any, shall be re-vested in the Debtor free and clear of

all liens, claims, interests and encumbrances of any kind, subject to and except as otherwise

provided in the Plan.

7.2   <u>Waiver of Claims</u>. As of the Confirmation Date, but subject to the occurrence of the Effective Date and only to the extent permitted by applicable law, and except as otherwise expressly provided in the Confirmation Order and/or this Plan, all persons who have held, hold or may hold Claims against the Debtor or the estate shall be deemed, by virtue of their receipt of distributions and/or other treatment contemplated under the Plan, to have forever covenanted with each of their respective present and former officers, directors, members, agents, employees, representatives, financial advisors, professionals, partners, accountants and attorneys and not to (i) sue, or otherwise seek any recovery from any of the foregoing, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Effective Date arising out of the business or affairs of the Debtor, or (ii) assert any Claim, obligation, right, cause of action or liability which any such holder of a Claim against the Debtor may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transactions or the occurrence taking place on or before the Effective Date in any way relating to the Debtor, this Chapter 11 Case, or this Plan. Nothing in this Plan shall, or shall be deemed to, release the Debtor from, or exculpate the Debtor with respect to, its obligations or covenants arising pursuant to the Plan or from willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or *ultra vires* acts.

7.3   <u>Payment of Estate Professionals for Post-Confirmation Date Services</u>. The Debtor is authorized after Confirmation of the Plan, without further order of the Court, to employ such persons, including professionals, as the Debtor may deem necessary to enable it to perform its functions hereunder. The reasonable compensation and out-of-pocket expenses incurred post-

Confirmation by the professionals retained by the Debtor during this Chapter 11 Case shall be paid by the Debtor within ten (10) days upon presentation of invoices for such post-petition professional services without further notice, hearing or approval of the Court. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

## ARTICLE VIII

8.1    <u>Exculpation</u>. Neither the Debtor, nor any professional person employed by the Debtor, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this Chapter 11 Case or the Plan, except as provided in the Plan. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability satisfied, discharged and released pursuant to Article 7.2 of the Plan; provided, however, that nothing in the Plan shall, or shall be deemed to, release the Debtor from, or exculpate the Debtor with respect to,  its obligations or covenants arising pursuant to the Plan or from bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or *ultra vires* acts. If the Plan is confirmed containing releases of liability as to the Debtor, creditors will be unable to pursue any Claims that are discharged under the Plan, but creditors can pursue claims against the Debtor that may arise in the future, or pursuant to the Plan. Any such liability against the Debtor's professionals will not

be limited to their respective clients contrary to the requirement of N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

8.2    <u>Injunction</u>. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims against the Debtor shall, as of the Effective Date, be enjoined from:

(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtor arising out of any act or omission of the Debtor or a purchaser which has purchased assets of the Debtor pursuant to Order of this Court regarding the Claims;

(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor with regard to such entities' Claim against the Debtor, or a purchaser which has purchased assets of the Debtor pursuant to Order of this Court;

(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, or the assets of the Debtor, or a purchaser which has purchased assets of the Debtor pursuant to Order of this Court, or any successor-in-interest to the Debtor;

(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the property of the Debtor, or a purchaser which has purchased assets of the Debtor pursuant to Order of this Court, or any successor-in-interest to the Debtor; and

(e) acting in any manner, in any place whatsoever, that does not conform to or comply

with the provisions of the Plan or a purchaser which has purchased assets of the Debtor pursuant to Order of the Bankruptcy Court.

**8.3**    **Discharge.**    In accordance with §1141(d) of the Bankruptcy Code, upon the completion of all payments required under the Plan, the Debtor will be discharged from its debts that arose before the Petition Date. As such, the rights afforded in the Plan and the treatment of all Claims therein shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever (including any interest accrued on such Claims), from and after the Petition Date against the Debtor and its Estate except as otherwise provided in the Plan, in §1141 of the Bankruptcy Code, or in the Confirmation Order.

**8.4**    **Final Decree**.  A Final Decree shall be entered as soon as practicable after distributions have commenced under this Plan.

### ARTICLE IX
### RETENTION OF JURISDICTION

9.1    The Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case:

(a)    To determine all controversies relating to, or concerning, the allowance of Claims upon objection to such Claims by any party in interest;

(b)    To determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)    To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts;

(d)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(e)     To determine all disputed, contingent or unliquidated Claims;

(f)     To modify this Plan pursuant to Section 1127 of the Code, or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Code;

(g)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan; and

(i)     To enter a final decree closing this Chapter 11 Case.

## <u>ARTICLE X</u>
## EVENTS OF DEFAULT

10.1     The occurrence of any of the following events shall constitute an event of default under the Plan ("Event of Default").

(a)     The failure of the Reorganized Debtor to make any payment due hereunder within ten (10) days of the due date as set forth herein, which has not been cured within an additional fifteen (15) day period after receipt of written or electronic notice of such default by the Reorganized Debtor and its counsel to the following mailing and email addresses:

Reorganized Debtor:          Carousel of Languages, LLC
                             Attn: Patrizia Saraceni Corman, President
                             1309 Madison Avenue
                             New York, NY 10128
                             Email: patrizia@carousellanguages.com


And Debtor's Attorney:       Arlene Gordon-Oliver & Associates, PLLC
                             199 Main Street, Suite 203
                             White Plains, New York 10601
                             Email: ago@gordonoliverlaw.com

unless the time for such payment has been extended in accordance with the Plan. The failure of
the Reorganized Debtor or Debtor's counsel to give notice of a change in address shall not be a
defense to the ability of the Creditor's right to enforce his rights under the Plan.   Upon an Event
of Default hereunder, holders of Allowed Claims may enforce such Allowed Claims under
applicable law.

(b)      The entry, prior to the payment of all distributions, of a decree or order for relief
by a court of competent jurisdiction in any voluntary or involuntary case under the federal
bankruptcy laws, as now or hereafter constituted, or under any other applicable federal or state
bankruptcy, insolvency or other similar law.

(c)      The appointment, prior to the payment of all distributions of a receiver, liquidator,
assignee, trustee or other similar official for all or any substantial part of the property of the
Reorganized Debtor, existing on the date of such appointment, and the continuance of any such
decree, order or appointment unstayed and in effect for a period of thirty (30) days.

(d)      The entry, prior to the payment of all distributions, of a judgment by a court of
competent jurisdiction against the Reorganized Debtor and the scheduling of a sale of 25% or
more of its assets, existing on the date of the entry of such judgment, pursuant to any formal
legal proceeding instituted against the Reorganized Debtor, and the Reorganized Debtor shall not
have discharged, vacated or stayed the judgment within at least two (2) days before the date
scheduled for such sale.  Debtor is obligated to give notice to all interested parties of any action
that could cause a sale of 25% or more of its assets and failure to give such notice within forty-
five (45) days of such sale is an event of default.

10.2     Upon the occurrence of any uncured Event of Default hereunder, a party-in-
interest may seek to convert the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy

Code or pursue any other legal remedies in or pursuant to the authority of any court of competent jurisdiction, and may seek reimbursement of the reasonable costs of enforcement, including reasonable attorney's fees.

10.3    Any default by Debtor in making any payment due hereunder, which is not cured in accordance herewith, shall entitle any party-in-interest to accelerate the unpaid balance due to it in accordance with the Plan.

**ARTICLE XI**
**VOTING INSTRUCTIONS**

11.1    Pursuant to a Court order, ballots on the Plan must be filed within a prescribed period of time.  All ballots should be properly completed as to whether the creditor accepts or rejects the Plan and be forwarded, in accordance with the instructions on the ballot, to Arlene Gordon-Oliver & Associates, PLLC, 199 Main Street, Suite 203, White Plains, New York 10601, Attn: Arlene Gordon-Oliver, Esq.

**ARTICLE XII**
**GENERAL/MISCELLANEOUS PROVISIONS**

12.1 <u>Modification of the Plan</u>. The Debtor reserves the right, in accordance with the Bankruptcy Code, to further amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter. After the Confirmation Date, the Debtor may, subject to order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

12.2 <u>Conditions to the Effective Date of the Plan</u>. The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(a)    the Confirmation Order in form and substance reasonably acceptable to the

Debtor shall have been entered by the Bankruptcy Court and shall have become a Final Order; and

(b)      all actions, other documents and agreements necessary to implement the Plan shall have been effected or executed and delivered.

(c)      in the event that one or more of the conditions specified have not occurred on or before 14 days after the Confirmation Date, upon notification submitted by the Debtor to the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all Holders of Claims shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtor's obligations with respect to the Claims shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claim or Interest by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

12.3 Withdrawal or Revocation of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.

12.4    Conditions to Withdrawal, Modifications and Amendments. Any act to amend, modify, revoke or withdraw the Plan shall require the consent of the Debtor. The Bankruptcy Court shall have sole and exclusive jurisdiction over any disputes regarding the foregoing.

12.5    Notices. All notices and correspondence should be forwarded in writing to:

Arlene Gordon-Oliver & Associates, PLLC
199 Main Street, Suite 203
White Plains, New York 10601
(914) 683-9750

22

Attn: Arlene Gordon-Oliver, Esq.

12.6    <u>Post-Effective Date Powers</u>. After the Effective Date, the powers of the Debtor shall include, but not be limited to, the following:

(a)    Review of all claims and proposed distributions to holders of Allowed Claims pursuant to the Plan;

(b)    Review and participation in all pending and further litigation before the Bankruptcy Court;

(c)    Authority to make any objections to Claims, where appropriate, as well as authority to commence adversary proceedings with respect to avoidance actions under Sections 547 through 552 of the Bankruptcy Code; and

(d)    Such other responsibilities and obligations as may be vested in the Debtor or as may be assumed pursuant to order of the Bankruptcy Court or pursuant to this Plan or the Bankruptcy Code.

12.7    <u>Post-Confirmation Reports and Fees.</u> The Debtor shall be responsible for filing post-confirmation disbursement reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930 until the earlier of (a) conversion or dismissal of this Chapter 11 Case or (b) entry of a final decree closing this Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. Section 1930 as are assessed.

12.8    <u>Preservation of Insurance.</u> The discharge and release of the Debtor as provided in this Plan shall not diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor or other person or entity, nor may any provision of the Plan.

12.9    <u>U.S. Trustee Fees and Disbursement Reports</u>. After the Confirmation Date, the Debtor will pay or cause the payment of all fees incurred pursuant to 28 U.S.C. §1930(a)(6) and

will file or cause the filing with the Bankruptcy Court and serve or cause service on the U.S.

Trustee of all post confirmation disbursement reports while this Chapter 11 Case remains open,

unless the Bankruptcy Court orders otherwise.

12.10    <u>Article and Section References</u>. Unless otherwise specified, all section, article and

exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.

The headings in the Plan are for convenience of reference only and shall not limit or otherwise

affect the provisions of the Plan; words denoting the singular number shall include the plural

number and vice versa, and words denoting one gender shall include the other gender.

12.11    <u>Payment Dates</u>. If any payment or act under the Plan is required to be made or

falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such

payment or performance of such act may be completed on the next succeeding business day, but

shall be deemed to have been completed as of the required date.

12.12    <u>Enforceability</u>. Should any provision in the Plan be determined to be

unenforceable, such determination shall in no way limit or affect the enforceability or operative

effect of any and all other provisions of the Plan.

12.13    <u>Applicable Law</u>. Except to the extent that the Bankruptcy Code is applicable, the

rights and obligations arising under the Plan shall be governed by, and construed and enforced in

accordance with, the law of the State of New York.

12.14    <u>Successors and Assigns</u>. The rights and obligations of any entity named or

referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns

of such entity.

12.15    <u>Reservation of Rights</u>. Neither the filing of this Plan, nor any statement or

provision contained herein, be nor be deemed to be an admission against interest. In the event that

the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside this Chapter 11 Case.

12.16   <u>Severability</u>. Except as to terms which would frustrate the overall purpose of this Plan, should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.17   <u>Confirmation Order.</u> The Confirmation Order shall ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct or gross negligence.

12.18   <u>Interpretation, Rules of Construction, Computation of Time, and Choice of Law.</u>

(a)     The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)     Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to any Exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in such Exhibit to the Plan.

(c)     The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause

contained in the Plan, unless the context requires otherwise.

(d)      Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and exhibits are references to Articles, Sections and Exhibits of or to the Plan.

(e)      Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)      Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)      Captions and headings to Articles and Sections in the Plan are inserted for the convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretations of any provisions hereof.

(h)      Whenever from the context it is appropriate, each term stated in either the singular of the plural shall include both the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

(i)      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(j)      All Exhibits to the Disclosure Statement are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

(k)      Subject to the provisions of any contract, certificate, bylaws, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in

accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

12.19   <u>No Admissions</u>. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including without limitation, any liability on or treatment of any Claim, or the propriety of a Claim's classification.

Dated:  New York, New York
        September 2, 2017

                    Carousel of Languages, LLC, Debtor

                    By: */s/ Patrizia Saraceni Corman*
                        Patrizia Saraceni Corman, President

                    ARLENE GORDON-OLIVER & ASSOCIATES, PLLC
                    Attorneys for the Debtor
                    199 Main Street, Suite 203
                    White Plains, New York 10601
                    (914) 683-9750

                     /s/Arlene Gordon-Oliver
                    Arlene Gordon-Oliver, Esq.